# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-cv-81162-BLOOM/Reinhart

JUAN TORRES and
ALEJANDRO TORRES,

      Plaintiffs,

v.

FIRST TRANSIT, INC.,

      Defendant.

_____/

### <u>ORDER</u>

**THIS CAUSE** is before the Court upon Defendant First Transit, Inc.'s Motion for New Trial and Remittitur, ECF No. [137] (the "Motion"). The Court has reviewed the Motion, all supporting and opposing submissions and exhibits, the record, and the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is denied.

## I. BACKGROUND

This case arises from an automobile accident that occurred on September 30, 2017. Defendant admitted liability. Following a three-day jury trial commencing on November 6, 2018 on the issue of damages, the jury returned verdicts in favor of each Plaintiff. As to Plaintiff Alejandro Torres, the jury awarded past medical expenses ($396,261.13), past pain and suffering ($600,000.00), and future pain and suffering ($1,500,000.00). As to Plaintiff Juan Torres, the jury awarded past medical expenses ($877,604.38), past pain and suffering ($1,050,000.00), and future pain and suffering ($3,000,000.00). ECF No. [109]. On November 13, 2018, the Court

entered Final Judgement in favor of the Plaintiffs for a total award of $7,423,855.51. ECF No. [4].

On December 11, 2018, Defendant filed the present Motion for New Trial, or, in the alternative, that remittitur be awarded, based on juror non-disclosure of prior litigation history and because the jury awards for past medical expenses and future pain and suffering are against the weight of the evidence.

## II. LEGAL STANDARD

Among other relief, a court may grant a new jury trial under Rule 59 "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). For instance, a party may assert that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). Thus, a motion for new trial should be granted "when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Brown v. Sheriff of Orange Cnty., Fla.*, 604 F. App'x 915 (11th Cir. 2015) (per curiam) (quoting *Lipphardt*, 267 F.3d at 1186); *see Tucker v. Hous. Auth. of Birmingham Dist.*, 229 F. App'x 820, 826 (11th Cir. 2007) ("[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence.");

"[G]ranting motions for new trial touches on the trial court's traditional equity power to prevent injustice and the trial judge's duty to guard the integrity and fairness of the proceedings before [her]." *Sherrod v. Palm Beach Cnty. Sch. Dist.*, 237 F. App'x 423, 424 (11th Cir. 2007) (quoting *Christopher v. Florida*, 449 F.3d 1360, 1366 n.4 (11th Cir. 2006)). Ultimately,

"motions for a new trial are committed to the discretion of the trial court." *Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999); *Steger*, 318 F.3d at 1081 (citing *Deas v. PACCAR, Inc.*, 775 F.2d 1498, 1503 (11th Cir. 1985)) ("A district court is permitted wide discretion in considering a motion for new trial based on an erroneous jury instruction.").

## III.  DISCUSSION

### A.  Juror Misconduct

Defendant contends that two jurors, by the initials YC and ES ("Juror YC" and "Juror ES"), concealed material facts during *voir dire* necessitating a new trial.  To obtain a new trial based on a juror's failure to accurately answer a question in *voir dire*, Defendant must "first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).  Further, "[t]he motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id.*  In other words, "[t]he second prong [of the *McDonough* test], that a correct response would have provided a valid basis for a challenge for cause, requires a showing of actual bias." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1473 (11th Cir. 1992) (citing *U.S. v. Perkins*, 748 F.2d 1519, 1532 (11th Cir. 1984); *U.S. v. Casamayor*, 837 F.2d 1509, 1515 (11th Cir. 1988)).

Here, jurors completed a jury questionnaire, which included question 10, stating: "If you and/or a close family member or friend has ever been a party to a lawsuit (i.e., sued someone or been sued by someone) please describe the circumstances."  ECF No. [141-1].  Juror YC responded "N/A" and Juror ES responded "No."  *Id.*; ECF No. [141-3].  Additionally, during *voir dire*, potential jurors were asked: "Is there anyone that has been involved in a civil lawsuit

that has shaped your view either negatively or positively about the legal system that you believe would have an effect on your ability to serve as a fair and impartial juror?"  ECF No. [124] at 34:1-5.  No jurors responded in the affirmative.  *Id.* at 34:6-7.

Defendant contends that based on information learned in its post-trial investigation, Juror YC and Juror ES concealed material facts during *voir dire*.  Defendant's investigation discovered that Juror YC and Juror ES had been named defendants in prior cases.  Specifically, Defendant provided court documents demonstrating that Juror YC had been sued three times by banks to recover debts, twice in foreclosure, and once by the State of Florida[1].  *See* ECF No. [141-2].  Juror ES was involved in one foreclosure, one action by a condominium association to recover unpaid assessments, three cases involving debt collection, and a personal bankruptcy. [2]  *See* ECF No. [141-4].  Defendant argues that the responses of Juror YC and Juror ES to question 10 of the juror questionnaire and their silence in response to the oral question concerning prior litigation history amount to a failure to honestly answer a material question.

### 1. Dishonesty

Under the first prong of the *McDonough* test, the Court must determine whether a juror failed to answer honestly a material question on *voir dire*.  Plaintiff argues that Defendant has failed to demonstrate that the Jurors' answers were dishonest.  Plaintiff specifically addresses question 10 of the juror questionnaire, arguing that the question is ambiguous because it defines being "a party to a lawsuit" as having "sued someone or been sued by someone."  Because each lawsuit Defendant identified in the litigation history of Juror YC and Juror ES was initiated by a

---

[1] In the action brought by the State of Florida, the claims and the facts of the case are not discernable from Defendant's submission.

[2] For the purpose of this Order, the Court will accept that the litigation history submitted by Defendant belongs to Juror ES, despite Plaintiff's contention that the filings could refer to Juror ES's father who has the same name.

corporation, not an individual, the Plaintiff contends that the jurors could have believed that they had not been sued by *someone*. The record evidence presented by the Defendant certainly supports the Plaintiffs' argument. However, for purposes of the Motion and further analysis, the Court will assume that the Jurors' answers on the juror questionnaire were dishonest. *See BankAtlantic*, 955 F.2d 1467, 1473 (11th Cir. 1992) (affirming denial of motion for new trial for failure to show actual bias where district court assumed that jurors' non-disclosure during *voir dire* was dishonest).

The Court cannot find, however, that Jurors YC's and ES's silence when questioned during *voir dire* amounts to dishonesty. Jurors were asked: "Is there anyone that has been involved in a civil lawsuit that has shaped your view either negatively or positively about the legal system that you believe would have an effect on your ability to serve as a fair and impartial juror." First, merely being involved in prior litigation does not necessarily shape one's view about the legal system. Second, to the extent that a juror's litigation history did shape his or her view of the legal system, it certainly does not necessarily follow that the juror believes that it has *affected* his or her ability to serve as a fair and impartial juror. The Court will not engage in second-guessing this kind of opinion-based juror expression which could only be speculated to be dishonest, nor is the Court required to hold an evidentiary hearing to investigate the issue further. *See New v. Darnell*, 409 F. App'x 281, 284 (11th Cir. 2011) ("To justify a post-trial hearing involving the trial's jurors, a moving party must do more than speculate; he must show clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred.") (internal quotations omitted).[3]

---

[3] Even if the Court were to conclude that Juror YC's and Juror ES's failure to disclose their respective litigation history in response to the oral question during *voir dire* amounted to dishonesty, a new trial would not be warranted because Defendant has failed to satisfy the second prong of the *McDonough* test.

*2.   Actual Bias*

To satisfy the second prong, there must be a showing "of bias that would disqualify the juror." *United States v. Carpa*, 271 F.3d 962, 967 (11th Cir. 2001).  "Bias may be shown either by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *Id.*  Defendant argues that Juror YC's and Juror ES's concealment of their respective "histories of being sued by large financial entities for non-payment of debt would readily be perceived as likely to sympathize with Plaintiffs in their pursuit of money damages from First Transit" due to the "'David versus Goliath' atmosphere" of the case.  ECF No. [137] at 5.  Defendant further contends that because "Plaintiffs' entitlement to recover the full amount of their hospital bills, notwithstanding a hospital's potential right of subrogation" was at issue during trial, "jurors who had been repeatedly sued for non-payment of a debt" are reasonably likely to be biased in favor of Plaintiffs.  *Id.* at 5-6.

Defendant has failed to demonstrate bias.  Defendant has not alleged that Juror YC or ES expressly admitted to being biased.  Nor has Defendant presented specific facts showing such a close connection to the litigation at hand that bias must be presumed.

In *New v. Darnell*, the plaintiff/appellant moved for a new trial in a gender discrimination case claiming a juror had not given truthful answers during *voir dire*.  409 F. App'x 281, 284 (11th Cir. 2011).  Appellant contended that a juror had failed to disclosure a charge of racial discrimination that had been filed with the EEOC in which the juror was named as the supervisor of the filer.  *Id.* at 382.  Concluding that the second *McDonough* requirement was not met, the Eleventh Circuit stated that "[t]here is not such a close connection between the two forms of discrimination that, taking into account [the juror's] uncertain role in the alleged discrimination, bias must be presumed."  *Id.* at 284.  Similarly, other courts in this District and elsewhere within

the Eleventh Circuit have found failure to demonstrate a close connection to the litigation at hand

where jurors did not disclose prior involvement in litigation. *See, e.g.*, *U.S. v. Burke*, No. 13-

20616-CR, 2016 WL 7665899, at *3 (S.D. Fla. Oct. 4, 2016) ("the jurors' allegedly undisclosed

bankruptcies, foreclosures, and short-sale mortgage transactions, if true, would not demonstrate

such a close connection to the mortgage-fraud scheme of this case that bias could be presumed"),

*aff'd*, 724 F. App'x 837 (11th Cir. 2018); *Myers v. Cent. Fla. Investments, Inc.*, No. 604-CV1542-

ORL-28DAB, 2008 WL 4710898, at *21 (M.D. Fla. Oct. 23, 2008) (rejecting argument that

juror with history of personal injury/automobile negligence claim could be expected to be

sympathetic to plaintiff bringing sexual harassment and battery claims considering that both

sought recovery for pain and suffering); *see also U.S. v. Hampton*, No. 3:10-CR-67-J-PAM-JRK,

2011 WL 13175098, at *2 (M.D. Fla. Apr. 4, 2011) (finding no close connection to criminal case

that "one prospective juror had served as a law enforcement officer on a sheriff's posse, that

another was also a former law enforcement …, that another had two sons who were correctional

officers, and that another had sat on two panels that rendered guilty verdicts in criminal cases

…"), *aff'd*, 484 F. App'x 363 (11th Cir. 2012).

      The Court does not find a close connection between this personal injury case stemming

from a car accident and any of the prior cases in which Juror YC or Juror ES was a party.  On the

surface, there is little to no connection between the present case and a lawsuit by a bank to

recover a debt, a foreclosure, a lawsuit by a condominium association to recover unpaid

assessments, or a personal bankruptcy.  And the Court is not persuaded by Defendant's attempt

to link the present case and the cases in Juror YC's and Juror ES's past as involving a "David

versus Goliath" atmosphere, causing the jurors to be biased against corporations.  The Court

finds little reason to presume that an individual who had been sued by a bank to recover unpaid

credit card bills, for example, would be biased against an unrelated corporation such as First Transit. An individual's history of having been sued by corporations bears only a very general connection to a case in which an unrelated corporation is a defendant.

Nor is the Court persuaded by Defendant's argument that because Plaintiffs' entitlement to recover the full amount of their hospital bills was at issue during trial, jurors who had been sued for non-payment of a debt are reasonably likely to be biased in favor of Plaintiffs. Defendant argues that jury selection demonstrated that the question of whether jurors could fairly try Plaintiffs' entitlement to recover the full amount of their hospital bills, notwithstanding a hospital's right of subrogation, was a potential issue in this case. But, the purported connection between lawsuits for non-payment of a debt and a personal injury case in which a jury must determine the reasonableness of Plaintiffs' medical bills is distant, and certainly far more attenuated than the connection between a gender discrimination claim and racial discrimination claim that the Eleventh Circuit considered in *Darnell*. Moreover, there is no evidence that Jurors YC or ES had a motive to intentionally omit from their jury questionnaire that they had been defendants in lawsuits for recovery of debts so that they could serve on a jury to award Plaintiffs the full amount of their medical bills, particularly given that jurors completed the questionnaires before they were made aware of this potential issue. *BankAtlantic*, 955 F.2d at 1473 (finding no bias where jurors had no "motive to conceal information just to get on the jury and find against [plaintiff]").[4]

Additionally, this Court questioned all the potential jurors as to whether they could serve as fair and impartial jurors and specifically addressed the issue of potential bias against

---

[4] The Court need not consider Plaintiffs' arguments that Defendant waived its right to challenge the alleged non-disclosure or that there is no proof that the Defendant would have challenged the jurors for cause if they had disclosed their litigation histories.

corporations. The Court asked the panel whether anyone felt that they could not serve as a fair and impartial juror. ECF No. [124] at 27:2-6. The Court asked the panel whether there was anyone that could not follow the law after hearing what the burden of proof was in this case. *Id.* at 31:5-8. The Court asked the panel whether there is anyone that has a belief, a feeling, or an attitude about corporation, either for them or against them, that might cause you to treat a corporation differently from an individual. *Id.* at 124:9-15. Neither Juror YC or ES answered in the affirmative to any of these questions. Accordingly, the record indicates the Jurors YC and ES were willing and able to be fair and impartial in this case and Defendant has failed to show any actual bias. *See Morales v. Merco Grp., Inc.*, No. 09-cv-22554, 2011 WL 3666605, at *4 (S.D. Fla. Aug. 22, 2011) (denying motion for new trial where plaintiff failed to show actual bias and the court questioned jurors on issues concerning their ability to be fair and impartial").

### B. The Verdict is Not Against the Great Weight of the Evidence

In a diversity action, the Court looks to state substantive law to determine whether a verdict is excessive. *Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1446 (11th Cir. 1991). Under Florida law, "[a] party who assails the amount of a verdict as being excessive, has the burden of showing it is unsupported by the evidence, or that the jury was influenced by passion or prejudice." *Bould v. Touchette*, 349 So. 2d 1181, 1184 (Fla. 1977) (internal quotation omitted). Florida Statutes Section 768.043 (2018), which governs remittitur in cases arising from the operation of motor vehicles states, in pertinent part:

> In any action for the recovery of damages based on personal injury or wrongful death arising out of the operation of a motor vehicle, . . . wherein . . . a verdict is rendered which awards money damages to the plaintiff, it shall be the responsibility of the court, upon proper motion, to review the amount of such award to determine if such amount is clearly excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact. If the court finds that the amount awarded is clearly excessive or inadequate, it shall order a remittitur or additur, as the case may be. If the party adversely affected by such

remittitur or additur does not agree, the court shall order a new trial in the cause
on the issue of damages only.

Fla. Stat. § 768.043(1).

Here, Defendant challenges the amount of the jury's award to Plaintiffs for past medical expenses and future pain and suffering. Specifically, Defendant takes issue with the jury's award of the full amount of each Plaintiffs' medical bills from Delray Medical Center —$669,779.21 as to Juan Torres and $356,744.81 as to Alejandro Torres. Additionally, the jury awarded Alejandro Torres $1.5 million and Juan Torres $3 million in future pain and suffering.

*1. Past Medical Expenses*

Defendant argues that Plaintiffs failed to meet their burden to prove the reasonableness and necessity of the Delray Medical Center bills. Defendant contends the only evidence before the jury concerning the reasonableness of the Delray Medical Center bills was the expert testimony of Dr. Zeide, opining that a reasonable charge for the hospital services would have been 15% of the charged amounts. Defendant concedes that a plaintiff's testimony that medical bills were incurred as a result of an injury will suffice to allow the bills into evidence but insists that a plaintiff's testimony may only link the medical treatment to the injuries resulting from the accident, not show the reasonableness of the amount of the medical bills. ECF No. 152 at 9-10. The Court disagrees.

The Florida Supreme Court in *Garrett v. Morris Kirschman & Co.* concluded that the plaintiff's testimony alone "made it a question for the jury to decide . . . whether [medical] bills represented reasonable and necessary expenses." 336 So. 2d 566, 571 (Fla. 1976). Applying the holding in *Garrett*, courts have found that the introduction of medical bills combined with testimony linking the medical bills to the accident at issue is sufficient to establish the reasonableness of the bills. *See, e.g.*, *Walerowicz v. Armand-Hosang*, 248 So. 3d 140, 144-45 (Fla. 4th DCA 2018) (plaintiff's testimony describing the treatment for which the bills were incurred

and relating that treatment to the injuries sustained, the surgeon's testimony, and introduction of the medical bills were sufficient to establish reasonableness of bills); *Polaco v. Smith*, 376 So. 2d 409, 409–10 (Fla. 1st DCA1979) (plaintiff's testimony "that she had incurred all of the medical bills as a result of the accident … alone was sufficient predicate for allowing the jury to resolve the question of whether the medical bills were reasonable or necessary"); *Easton v. Bradford,* 390 So.2d 1202 (Fla. 2d DCA 1980) ("the trial judge properly placed the question of the necessity and reasonableness of the charges within the purview of the jury" in light of plaintiff's testimony relating the treatment to the accident).

Here, Defendant does not dispute that Plaintiff established that the medical bills were related to the subject accident. Rather, as Defendant states, "[t]he issue here is the reasonableness of the *charges* for which Delray billed." ECF No. [152] at 10 (emphasis in original). That issue was for the jury, who was free to give Dr. Zeide's testimony as much or as little weight as it deemed appropriate. Accordingly, the jury's award of the full amount of the Delray Medical Center bills was supported by the evidence at trial.

## 2. *Future Pain and Suffering Damages*

Defendant argues that the jury award for future pain and suffering is excessive, bears no relationship to the evidence presented, and is necessarily the product of passion or prejudice.[5] A "new trial should be ordered only where the verdict is so excessive as to shock the conscience of the court." *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1447 (11th Cir. 1985). Moreover, "[d]amages for pain and suffering are difficult to calculate, have no set standard of measurement, and for this reason are uniquely reserved to a jury for their decision." *Pogue v.*

---

[5] Defendant concedes that Plaintiffs are entitled to an award for future pain and suffering, acknowledging that Defendant's counsel suggested to the jury an award of $350,000 for Alejandro Torres and $600,000 for Juan Torres at trial.

*Garib*, 254 So. 3d 503, 507 (Fla. 4th. DCA 2018) (internal quotation omitted).

Here, Plaintiffs each provided testimony of the nature of their respective injuries, how the injuries have affected their lives, and their condition at the time of trial. Based on the evidence presented to the jury, it was reasonable for the jury to conclude that Plaintiffs would continue to suffer from their injuries in the future. *See Sullivan v. Price*, 386 So. 2d 241, 244 (Fla. 1980) (holding that "the jury could have concluded with reasonable certainty that the injury's consequences would continue into the future" based on "evidence of the nature of [plaintiff]'s injury, its duration, his resultant demotion, and lack of recovery at the time of trial"). The Court does not find that the jury award to Plaintiffs for future pain and suffering was so excessive as to shock the conscience of the court.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant First Transit, Inc.'s Motion for New Trial and Remittitur, **ECF No. [137]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of February, 2019.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

12